IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| v. | : CASE NO.: 1:21-CR-274-ELR-JSA |
| MARK ANTONIO GOINES, | : |
| Defendant. | : |

### REPORT AND RECOMMENDATION

Defendant moves to suppress the proceeds of a search of his residence, arguing that the issuing state court judge erroneously found probable cause to have been established. The undersigned, however, does not find probable cause to be lacking and alternatively finds that, even if probable cause were lacking, the officers lacked a good faith basis to rely on the duly-issued warrant. Thus, the Motion to Suppress [48] should be **DENIED**.

**I.    BACKGROUND**

On August 17, 2020, Officer R. Burkhart from the City of South Fulton Police Department secured a warrant from a Fulton County Magistrate allowing the search of a residential property in Atlanta (the "Property"). *See* [48] at 14-15. In the affidavit that supported the warrant application, Officer Burkhart stated, in sum:

1

On May 7, 2020, an anonymous caller complained about excessive numbers of vehicles regularly parked at the intersection of Bon Echo Drive and Jailette Road. [48] at 17. According to the complainant sometimes there were as many as seven vehicles parked back-to-back seemingly waiting. *Id*. The complainant reported that after a few minutes they would see a black late model BMW X-4 sports utility vehicle arrive, and that the driver (black male) would engage in what appeared to drug transactions with the occupants of the parked vehicles, after which the parked vehicles would leave. *Id*.

A few days later, May 11, Officer Burkhart met with the complainant, and rode with him/her in an undercover vehicle. *Id*. They drove onto Bon Echo Drive, which is a single lane dirt road, to the sole occupied residence at the end. *Id*. The complainant relayed that he/she knew the woman who lived there, and the woman had similarly reported observing excessive parked cars and apparent drug transactions. *Id*. As the officer and complainant exited Bon Echo Drive, they passed a black BMW being driven by a black male who leaned out of the window to look at them. *Id*. The complainant told Officer Burkhart that this was the same individual driving the same car as was involved in the apparent drug transactions. *Id*. Further, according to Officer Burkhart, he personally recognized the driver as Mark Goines, who had been a subject of prior drug trafficking arrests. *Id*. Officer Burkhart turned to pull behind Goines's car, but Goines sped up and left the area.

*Id*. After following Goines around various nearby streets, eventually Goines pulled alongside Burkhart's undercover vehicle while stopped at a light, leaned out and glared and Burkhart, and then spat on Burkhart's car and drove away. *Id*. In the meantime, Burkhart was able to get the BMW's tag number and later discovered that the tag number was registered to Goines's girlfriend, Shiquita Lanier-Hathaway. *Id*.

Burkhart conducted surveillance at the site on May 12 and observed no activity for approximately one hour. *Id*. However, as he and his partner began to leave the area, Goines overtook them in the BMW, then followed the officers and eventually illegally passed them at a high rate of speed. *Id*.

Almost two months later, in early July, Burkhart placed a surveillance camera at the Bon Echo/Jailette intersection. *Id*. The footage from approximately July 13 through July 29 showed vehicles parking at the intersection and Goines meeting with the occupants. *Id*. Goines generally drove the same BMW and also a silver Toyota bearing a dealer tag that was captured by the camera. *Id*.

By July 22, the officers had identified the Property as the search premises in the warrant, which is approximately one mile from the Bon Echo Drive intersection, as a residence at which Defendant lived or that he at least used. *Id*. They observed both the BWM and the Camry in the driveway. They also saw

Goines exit the Property and (by monitoring the cameras at Bon Echo Drive) saw him arrive at the Bon Echo Drive intersection shortly thereafter. *Id*. at 17-18.

On July 29, through a combination of physical surveillance and monitoring the surveillance camera at Bon Echo Drive, the officers saw Goines's Black BMW parked at the Premises, and then travel to meet a red Ford F-150 pick-up truck at the Bon Echo intersection. Shortly after the two vehicles left the intersection, officers pulled over the pick-up truck based on a traffic violation, and discovered that the driver was in possession of three grams of methamphetamine. *Id*. at 17-18. The driver stated that he had purchased the drugs from "Lucky" (a/k/a Goines) at the Bon Echo Drive intersection. *Id*.

Later that same day, officers saw the Defendant and his BMW again arrive at the Bon Echo Drive intersection, meet with the occupants of a Dodge Ram pick-up truck, and then travel to the Premises. The Dodge Ram was pulled over, and the occupants were found with three grams of heroin. *Id*. The occupants stated that they had purchased the drugs from "Lucky" in the intersection, and one of the occupants stated that he had similarly purchased drugs from "Lucky" at least a hundred times since 2017. *Id*. This occupant also stated that he had sold and traded guns with "Lucky," including assault rifles. *Id*.

Goines had been arrested six times for narcotics sales since 2000. *Id*.

4

## II. DISCUSSION

A judicial officer asked to issue a search warrant must make a practical common-sense decision, given all the facts set out in the application, that there is a fair probability that contraband or evidence of a crime will be found in specified premises. *See Illinois v. Gates*, 462 U.S. 213 (1983). Courts reviewing the sufficiency of warrant applications after-the-fact should not do so in a hyper-technical manner; Rather, courts must employ a realistic and common-sense approach so as to encourage recourse to the warrant process and to recognize the significant deference afforded to the decisions of the issuing judge. *Id.*; *United States v. Miller*, 24 F.3d 1357 (1994). Ultimately, the question is "whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984).

Moreover, regardless of whether it agrees that the affidavit established probable cause, the reviewing court must deny suppression unless the affidavit was so lacking as to render official belief in the validity of the warrant entirely unreasonable. *United States v. Martin*, 297 F.3d 1308 (11th Cir. 2002). This is because the purpose behind the exclusionary rule–to deter law enforcement officers from violating the Constitution–is not met where an officer's reliance on a search warrant issued by a neutral judge was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 926 (1984).

Under the "good-faith exception" set forth by the Supreme Court in *Leon*, *id.*, where officers rely in good faith on a facially valid warrant, the evidence secured thereunder should not be excluded even if the warrant ultimately turns out to be defective. Only in four specific situations is the good-faith exception inapplicable: (1) where the issuing magistrate or judge was misled by information in an affidavit that the affiant knew was false or, except for reckless disregard for the truth, should have known was false; (2) where the judicial officer that issued the warrant "wholly abandoned his judicial role;" (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) where the warrant issued is "so facially deficient... that the executing officers cannot reasonably presume it to be valid." *Id.*, 468 U.S. at 923.

"Good faith" is an objective standard judged by what a reasonable police officer under the circumstances would perceive, not the expert standard of a legally trained judge. *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990). Although the Government bears the burden of demonstrating the applicability of the *Leon* good faith exception, *see United States v. Travers*, 233 F.3d 1327, 1331 n. 2 (11th Cir. 2000), it may do so with reference to the warrant itself, *see United States v. Robinson*, 336 F.3d 1293, 1297 (11th Cir. 2003).

Defendant's argument as to why the warrant in this case lacked probable cause consists of three sentences:

> In the instant case, the agents applied for a search warrant nineteen days after the last reported activity anywhere near the surveilled intersection or to the suspect residence location. All surveillance at the location ceased on July 29, 2020 and no additional information of alleged drug activity at this location after July 29, 2020 was presented in the residence search warrant application. Defendant argues that the application presented stale information and that probable cause for the warrant's issuance was lacking.

Motion [48] at 8-9.

The Court rejects this argument. The affidavit more than sufficiently demonstrated that Defendant was engaged in a long-standing pattern of drug trafficking apparently involving the Premises. Based on the information supplied by witnesses and the officers' surveillance, it appeared that Defendant was dealing drugs at the Bon Echo location for at least several months, and on several occasions he was seen leaving the Premises and/or returning to the Premises immediately before or after. Indeed, it was reasonable to infer from these facts that the Defendant purposefully chose a location nearby to his residence to engage in drug transactions, so that he could conveniently bring the drugs he kept at the residence to that location but yet not have to engage in transactions with drug buyers at his residence itself. It was also reasonable to believe that the Defendant had been engaged in drug sales generally for years, as one of the arrested drug buyers informed officers that he had bought drugs from Defendant at least a

7

hundred times in the preceding three years, and had traded guns with him. Further, the Defendant had been arrested six times for drug sales, and was even personally known to the affiant based on prior drug investigations.

In the context of this substantial factual record, the relatively minimal gap of 19 days between the last act of surveillance and the procurement of the warrant did not remotely dissipate probable cause. Quite obviously, it was reasonable to believe that the same activities in which Defendant had been engaged for months and years had not suddenly stopped within just 19 days. At a minimum, even if *arguendo* the existence of probable cause could be debated (which it cannot), the facts were not so clearly deficient as to vitiate the officers' ability to reasonably rely on the duly-issued warrant. Suppression must be denied.

### III.  CONCLUSION

It is **RECOMMENDED** that the Motion to Suppress [48] be **DENIED**.

This matter is **READY FOR TRIAL**.

**IT IS RECOMMENDED** this 13th day of October, 2022.

_____
**JUSTIN S. ANAND**
**UNITED STATES MAGISTRATE JUDGE**